UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 4:14CR165 |
| | ) | |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | OPINION AND ORDER |
| | ) | |
| | ) | |
| DORIAN CHRISTIAN, | ) | |
| | ) | |
| | ) | |
| DEFENDANT. | ) | |

Defendant Christian seeks to suppress all evidence seized and statements made by him during a police stop of his vehicle on April 14, 2014. (Doc. No. 11.) By this same motion, Christian also seeks the exclusion at trial of all physical evidence gathered during the subsequent searches of the premises located at 448 and 452 N. Garland, Avenue, Youngstown, Ohio. The government opposes the motion. (Doc. No. 12.) The Court conducted an evidentiary hearing on the motion on July 7, 2014. At the conclusion of the hearing, the Court took the matter under advisement.

I. **BACKGROUND**

In 2013, the Drug Enforcement Administration ("DEA") began investigating alleged drug trafficking activity by defendant. As part of the investigation, the government employed the services of a confidential source ("CS"), who made a series

of controlled drug buys from defendant, between March 19, 2014 and April 11, 2014, at two adjoining Youngstown properties associated with defendant. During each buy, defendant's black Cadillac was parked outside one of the two properties.

On April 3, 2014, Magistrate Judge George Limbert signed a warrant authorizing the placement of a GPS tracking device on defendant's Cadillac. (Tracking Warrant, Doc. No. 12-1 [Government's Hearing Exhibit 1].) The tracking warrant permitted officers to install the tracking device, collect and evaluate the resulting data for 45 days, and ultimately remove the tracking device at any time prior to the end of the monitoring period. (*Id.* at 61.) To justify the need for the tracking warrant, the magistrate judge found that the warrant application demonstrated "reason to believe that the [vehicle] has been involved in and likely will continue to be involved in the criminal activity identified in the application [to wit, drug trafficking]." (*Id.*) The tracking device was ultimately placed on the Cadillac but the batteries expired within days of its installation.

Also on April 3, 2014, Magistrate Judge Limbert signed two search warrants for the Youngstown properties. (Search Warrants, Doc. Nos. 12-1 and 12-2 [Government Hearing Exhibits 2 and 3].) In support of these warrants, the magistrate judge determined that there was probable cause to believe that evidence of drug trafficking would be found on the premises. The warrants commanded officers to conduct the searches on or before April 16, 2014.

On the morning of April 14, 2014, officers organized for the purpose of executing the search warrants, and defendant was placed under surveillance. Officers observed defendant leave the premises and travel to a nearby store. Between thirty and

2

forty-five minutes later, defendant was observed leaving the store and heading in the direction of his properties. Heading southbound, defendant's vehicle passed Task Force Officer Samuel Mosca, who was travelling northbound. Defendant looked at Officer Mosca's unmarked car and kept driving in the direction of his premises. Officer Mosca turned his vehicle around, followed defendant, and stopped him approximately one-tenth of a mile away from the locations where the searches were to take place. Officers detained defendant and searched the vehicle. Officers discovered a cell phone and currency. Officers seized the vehicle and detained defendant "pending the execution of the search warrants." (Doc. No. 12 at 52.) Defendant was Mirandized at that time.

At the hearing, Officer Mosca testified that he was convinced that defendant had actually spotted his vehicle several times that morning before he stopped defendant. According to Officer Mosca, this was a cause for concern because it was believed that defendant was familiar with several of the vehicles involved in the drug investigation. He explained that, during one or more controlled purchases, defendant told the CS that he knew officers were watching him and described some of the vehicles used by officers, including Officer Mosca's car. Officer Mosca further testified that, as a result of past controlled buys involving defendant, he believed that the car had been involved in drug trafficking activity.

Officer Kevin Ruse was patrolling the general area at the time in a marked Youngstown police cruiser and assisted Officer Mosca with the stop. Once the Cadillac was immobilized, Officer Mosca asked defendant and his passenger to step out of the vehicle, and the two were placed in handcuffs for officer safety. The officers then waited for other members of the surveillance team to arrive.

Officer Josh Wells of the Canfield Police Department, and member of the drug task force, was one of the first officers to arrive after defendant was placed in handcuffs. He testified that he was en route to defendant's premises with the search warrants when he learned that defendant had been detained near the premises. He stopped briefly at the scene and spoke with Officer Mosca. According to Officer Wells, defendant's residences were visible from the intersection where defendant had been stopped. The Cadillac was ultimately searched, and the search yielded the afore-mentioned currency and cell phone.

Following the search of the vehicle, defendant was transported to the premises that were the subject of the search warrants and officers conducted their search of the premises. During this search, defendant assisted officers by allowing them to use his key to gain entrance and by restraining a "hostile" dog in the backyard of one of the properties. The search yielded a detectable amount of marijuana, weapons, and ammunition. Officers also removed the tracking device from the Cadillac at the time of the searches. Defendant was subsequently charged with five counts of distributing heroin, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and one count of being a felon in possession of a weapon, in violation of 18 U.S.C. §§ 922(g)(1) and 924 (a)(2). (Indictment, Doc. No. 6.)

At the hearing, Officers Mosca and Wells each testified that the purpose of the stop was to remove the GPS tracking device, while Officer Mosca added that defendant was detained in order to execute the search warrants. Further, though Officer Wells insisted that defendant was not arrested until after the drugs and weapons were located on his premises, he conceded that, from the time defendant was placed in

4

handcuffs at the scene of the traffic stop, defendant was not free to leave. As for the search of the vehicle, Officer Wells testified that it was searched because it was subject to forfeiture as having been used in the trafficking of illicit drugs.

Defendant argues that there was no lawful cause to stop him while he was traveling in his vehicle, away from his residence, or probable cause to arrest and detain him without a warrant. The government defends the detention and search of defendant and his vehicle on four grounds: (1) the officers properly stopped the car because a tracking warrant gave them the authority to do so, (2) officers properly detained defendant in the vicinity of the house that was to be searched, (3) the automobile exception authorized officers to search the car, and (4) the officers would have inevitably discovered the evidence during an inventory of the car. The government further argues that the evidence ultimately found in the two residences was not the "fruit of a poisonous tree."

## II. GOVERNING LAW AND DISCUSSION

### A. The Tracking Warrant

At the evidentiary hearing, government's counsel argued that the previously issued tracker warrant supplied the necessary authority to stop defendant's vehicle to install and/or remove the GPS tracking device. In this regard, Officer Mosca testified that it was his understanding that the tracking warrant permitted officers to stop and remove the tracking warrant at any time within the 45 day window set forth in the warrant.

In 2012, the Supreme Court touched upon the use of GPS tracking devices by law enforcement in *United States v. Jones*, -- U.S. --, 132 S. Ct. 945, 181 L. Ed. 2d

5

911 (2012). There, the Court specifically ruled that the monitoring of a vehicle, via a GPS tracking device, constitutes a search. 132 S. Ct. at 949. Prior to the ruling in *Jones*, the circuit courts were split on whether a warrant was needed to install tracking devices, and, in the months that followed *Jones*, courts grappled with the issue of whether warrantless searches using GPS tracking devices ran afoul of the Fourth Amendment. *See, e.g., United States v. Ortiz*, 878 F. Supp. 2d 515, 526 (E.D. Pa. 2012); *United States v. Luna-Santillanes*, No. 11-20492, 2012 WL 1019601, at *1 (E.D. Mich. Mar. 26, 2012); *see also* Caleb Mason, *New Police Surveillance Technologies and the Good-Faith Exception: Warrantless GPS Tracker Evidence After United States v. Jones*, 13 Nev. L.J. 60, n.113 (2012) (collecting cases).

*Jones* did not, however, address searches, such as the one at issue here, where officers had obtained a tracking warrant. In fact, the parties have failed to identify any Fourth Amendment case involving the use of GPS tracking warrants, the procedure for installing or removing GPS tracking devices, or the legality of any vehicle stops and detainer of a vehicle's occupants premised on the need to install or remove such a device. Of course, this is not surprising inasmuch as GPS tracking devices are usually placed in secret on a vehicle without the knowledge of, or in view of, the owner. Indeed, while notice is usually given to a property owner at the time of the execution of a search warrant, Rule 41 of the Federal Rules of Criminal Procedure contains a special provision for delaying notice to the vehicle's owner so as not to tip off the owner of the monitoring of the movements of his vehicle. Fed. R. Crim. P. 41(f)(2)(C) (permitting delayed notice to owner of the property tracked—within 10 days *after* the use of the device has ended).

Nevertheless, defendant does not necessarily challenge the government's

6

right to stop the vehicle to remove the tracking device. He does, however, insist that the existence of a tracker warrant does not authorize law enforcement to detain and arrest an individual at any time and any place simply on the guise of removing the tracking device. The Court agrees. Thus, even if the initial stop of defendant's vehicle was justified by the existence of the tracker warrant, the Court finds that the government must look elsewhere for justification for the continued stop, detention, search, and arrest.

B. **Vicinity of Residences to be Searched (*Summers* and *Bailey*)**

The government maintains that officers had authority to stop and detain defendant incident to the execution of the search warrants at his residences because defendant was in the general vicinity of the residences immediately prior to the search. In *Michigan v. Summers*, 452 U.S. 692, 705, 101 S. Ct. 2587, 69 L. Ed. 2d 340 (1981), the Supreme Court authorized law enforcement to detain occupants of premises subject to a valid search warrant while the search was underway. The Court narrowed the scope of this authority in *Bailey v. United States*, -- U.S. --, 133 S. Ct. 1031, 185 L. Ed. 2d 19 (2013). There, the Court held that detention incident to the execution of a search warrant is limited to "the immediate vicinity of the premises to be searched[.]" *Id*. at 1042. In *Bailey*, officers preparing to execute a search warrant at the defendant's apartment observed the defendant leave the premises in a vehicle. They followed him for about a mile before pulling the vehicle over by a fire station. In ruling that *Summers* did not extend to a search away from the place to searched, the Court observed:

> Once an occupant is beyond the immediate vicinity of the premises to be searched, the search-related law enforcement interests [identified in *Summers* as "minimizing the risk of harm to the officers[,]" the "orderly completion of the search," and "the legitimate law enforcement interest in preventing flight in the event incriminating evidence is found"] are

7

diminished and the intrusiveness of the detention is more severe.

*Id*. (citing *Summers*, 452 U.S. at 702-03).

The Court in *Bailey* determined that the defendant was detained "at a point beyond any reasonable understanding of the immediate vicinity of the premises in question[,]" rendering *Summers* inapplicable. *Id*. at 1042. In "closer cases," the Court directed trial courts to consider certain factors to determine whether the defendant was detained within the "immediate vicinity," including: "the lawful limits of the premises, whether the occupant was within the line of sight of his dwelling, the ease of reentry from the occupant's location, and other relevant factors." *Id*.

The government suggests that this is one of those "closer cases" because defendant was detained within the immediate vicinity as he was only one-tenth of a mile away from the properties to be searched, the properties were visible from that location, and he appeared to be returning home when he saw Officer Mosca and drove past the properties. *See, e.g., Gaines v. United States*, Case No. 13-CV-2157, 2014 WL 1891340, at *5 (C.D. Ill. May 12, 2014) (defendant was properly detained as he drove by his residence "at the time the search warrant was executed"). Defense counsel argued at the hearing that the exception for seizures made during the execution of search warrants in *Summers* and *Bailey* is not applicable where, as here, the search warrants had yet to be executed.

In *United States v. Brodie*, 742 F.3d 1058, 1060 (D.C. Cir. 2014), officers observed the defendant "[w]hile waiting to execute a search warrant" at defendant's home. *Id*. at 1060. The defendant pleaded guilty to the underlying charges but reserved the right to challenge the district court's denial of his motion to suppress. On appeal, the

8

court reversed the conviction. The court began with the observation that *Bailey* clearly limited the exception for seizures of individuals made during the execution of search warrants "'to those who are present *when* and *where* the search is being conducted.'" *Id*. at 1062 (quoting *Bailey*, 133 S. Ct. at 1038) (emphasis added by the 11th Circuit). It found that it did not need to determine whether the defendant's seizure met the "where" requirement because it did not meet the "when" requirement, inasmuch as the defendant was observed merely in anticipation of the search. *Id*. While recognizing that such a limitation may create certain risks for law enforcement, the court emphasized that *Bailey* expressly rejected as a basis for seizure the prospect that someone who left a dwelling about to be searched might return during the search, or that "a departing occupant might notice the surveillance and 'alert others still inside the residence[.]'" *Id*. (quoting *Bailey*, 133 S. Ct. at 1039-40).

As was the case in *Brodie*, defendant was stopped and detained prior to the execution of the search warrants. In fact, the officer tasked with the responsibility of bringing the warrants to the properties to be searched—Officer Wells—had joined Officer Mosca at the scene of the traffic stop and could not have executed the search warrants until he continued on with the warrants to the properties. Under these circumstances, the Court cannot find that the officers were justified in detaining defendant and searching the vehicle in connection with searches that had yet to occur.

A finding that the "immediate vicinity" exception is inapplicable does not end the inquiry, as the Court in *Bailey* also specifically left open the possibility that there could be bases, independent of the execution of a search at another location, that could

9

justify the search.[1] *Id*. at 1042. In the wake of *Bailey*, courts have regularly validated searches of vehicles and detentions of individuals beyond the immediate vicinity where other bases, such as the existence of probable cause, supported the seizure. *See, e.g., United States v. Fahnbulleh*, No. CR 13-145 S, 2014 WL 2880215 (D. R.I. June 24, 2014) (even though defendant left scene to be searched and was apprehended at a remote car wash, *Baily* did not invalidate the search because there was probable cause from recent execution of a controlled purchase of cocaine); *United States v. Bocanegra*, Criminal Case No 1:13-CR-0039-WBH-JSA, 2014 WL 2883430 (N.D. Ga. Feb. 26, 2014) (defendant's arrest was valid, though made two miles away from search, where officers had probable cause to believe that defendant was involved in illegal drug trafficking), *report adopted by* 2014 WL 2883471 (June 25, 2014); *United States v. Mitchner*, No. CR 11-124 S, 2013 WL 5942377 (D. RI. Nov. 5 2013) (similar); *United States v. Dixon*, Criminal Action No. 11-10218-JLT, 2013 WL 1821613, at *4 (D. Mass. Apr. 29, 2013) ("*Baily* has no relevance . . . because the officers had probable cause to arrest" the defendant by virtue of controlled buys set forth in warrant application).

    *Automobile Exception*

"Generally, the Fourth Amendment requires police officers to obtain a warrant prior to conducting a search. However, the Supreme Court has long recognized

---

[1] The government also attempts to rely on the fact that defendant assisted officers in the search, supplying a key and restraining a dog in the backyard. With respect to the legitimate goal of ensuring the orderly completion of a search, the Court in *Summers* observed that the search may be facilitated "if the occupants of the premises are present[,]" noting that the occupants may have a "self-interest" in avoiding the use of force that may damage the property to be searched or prolong the search. 452 U.S. at 703. *Summers* dealt with an individual already on the premises that was detained. In contrast here, officers seized defendant at a separate location and returned him to the properites prior to the search. The government points to no authority that would support the position that an otherwise illegal search can be cured by the subsequent assistance of the suspect.

an exception to the warrant requirement with respect to searches of vehicles." *United States v. Smith*, 510 F.3d 641, 647 (6th Cir. 2007) (citations omitted.) The automobile exception to the warrant requirement provides that officers need not obtain a warrant to search a vehicle when they have probable cause to believe it contains contraband or evidence of criminal activity. *Pennsylvania v. Labron*, 518 U.S. 938, 940, 116 S. Ct. 2485, 135 L. Ed. 2d 1031 (1996); *see, e.g., Smith*, 510 F.3d at 648 (warrantless automobile search valid because police had probable cause after investigation revealed that defendant routinely used cars to transport drugs, and the vehicle parked outside the house where officers found evidence of drug deals was registered to the defendant). Probable cause, in turn, is based on the totality of the circumstances; "it is a 'practical, non-technical conception that deals with the factual and practical considerations of everyday life.'" *United States v. Abboud*, 438 F.3d 554, 571 (6th Cir. 2006) (quoting *United States v. Fraizer,* 423 F.3d 526, 531 (6th Cir. 2005)).

Relying on the automobile exception to the warrant requirement, the government argues that officers had probable cause to believe that defendant had "used the Cadillac to facilitate his drug trafficking activities." (Doc. No. 12 at 56.) Yet, this is not the standard. As set forth above, the Court must consider, not whether the car was used for illegal activity, but whether there was probable cause to believe that the vehicle, itself, would contain contraband or evidence of illegal activity. *See, e.g., United States v. Johnson*, 707 F.3d 655, 658 (6th Cir. 2013) (warrantless automobile search valid because officer had probable cause after smelling marijuana in the vehicle); *United States v. Ned*, 637 F.3d 562, 567-68 (5th Cir. 2011) (warrantless search valid because police had probable cause after receiving tip providing license plate number of car containing drugs

and drug dog signaled to same car).

The government continues by underscoring the following facts: (1) that there was evidence that the Cadillac was defendant's only car, (2) that the registration listed one of the two residences that were searched, (3) that the car was present during multiple controlled buys, and (4) that a confidential source advised law enforcement that the car's presence at the properties "meant that Christian was available to sell heroin." (Doc. No. 12 at 56-57.) While these facts support a finding that the vehicle played a meaningful role in the drug activity, they do not support probable cause to believe that drugs would be *inside* the car. *See, e.g., Mack v. City of Abilene*, 461 F.3d 547, 553 (5th Cir. 2006) (warrantless automobile search invalid because officers had no probable cause to believe contraband would be found in the vehicle, even though informant gave police probable cause to believe that there was contraband in defendant's other vehicle and apartment); *United States v. Infante-Ruiz*, 13 F.3d 498, 502 (1st Cir. 1994) (warrantless automobile search invalid because officers had no particular information indicating defendant was transporting drugs or weapons at the time of the stop); *see also Smith*, 510 F.3d at 649 (distinguishing cases where there was "no information or evidence that suggested the vehicles in question contained contraband"). The Court finds, therefore, that the automobile exception to the warrant requirement cannot supply the necessary justification for the warrantless search of the Cadillac.

C. **Forfeiture**

The fact that the vehicle served as an "open for business" sign suggests that the search can be sustained as incident to an intended forfeiture proceeding. According to 21 U.S.C. § 881 (a)(4), vehicles "which are used, or are intended for use, to

transport, or in any manner to facilitate the transportation, sale receipt, possession, or concealment of [controlled substances]" shall be subject to forfeiture. "[E]ven if the police lack probable cause to believe a car contains contraband, they may seize the car if they have probable cause to believe the car itself *is* contraband." *United States v. Musick*, 291 F. App'x 706, 722 (6th Cir. 2008) (vehicle was properly seized and searched as subject to forfeiture) (emphasis added); *see Smith*, 510 F.3d at 651 ("When police have probable cause to believe that an automobile is forfeitable contraband, it may be seized from a public place without a warrant.") (citations omitted); *United States v. Decker*, 19 F.3d 287, 290 (6th Cir. 1994) ("a pre-forfeiture inventory search of a vehicle does not require a warrant").

Here, Officer Wells testified credibly that he believed that the vehicle had been used to facilitate drug trafficking and that, therefore, it was seized as incident to an anticipated forfeiture. Because it was reasonable for officers to believe that the vehicle was subject to forfeiture, it was properly seized and searched incident to forfeiture. For this reason alone, defendant is not entitled to the suppression of the fruits of that search, and his motion is DENIED.

D. **Inevitable Discovery Exception**

The inevitable discovery exception to the exclusionary rule provides that a court may admit illegally obtained evidence if the evidence would inevitably have been discovered through independent, lawful means. *See United States v. Alexander*, 540 F.3d 494, 502-03 (6th Cir. 2008) (evidence admissible despite illegal treatment of defendant because evidence would have been discovered properly based on investigation and search warrant). This doctrine applies where "the government can demonstrate *either* the

13

existence of an independent, untainted investigation that inevitably would have uncovered the same evidence *or* other compelling facts establishing that the disputed evidence inevitably would have been discovered." *United States v. Keszthelyi*, 308 F.3d 557, 573-74 (6th Cir. 2002) (emphasis in original) (citation omitted).

It is the government's position that the evidence obtained through the search of the vehicle would have been discovered in the course of an inventory of the vehicle incident to defendant's arrest after the drugs and weapons were recovered from defendant's residences. "A valid inventory search conducted without a warrant does not violate the Fourth Amendment." *Smith*, 510 F.3d at 650 (citations omitted). "In order to be deemed valid, an inventory search may not be undertaken 'for purposes of investigation,' and it must be conducted 'according to standard police procedures.'" *Id*. at 651 (quoting *United States v. Lumpkin*, 159 F.3d 983, 987 (6th Cir. 1998)).

Officer Mosca testified that the Youngstown Police Department has an "inventory tow" policy that provides that when an operator of a vehicle is ultimately arrested and removed from the scene, the vehicle is impounded and an inventory search of the vehicle is conducted prior to towing. (Policy [Youngstown City Ord. § 303.08], Government Hearing Exhibit 4.) While the policy does not specifically mention impounding incident to arrest, the Court finds that the credible testimony of Officer Mosca at the hearing sufficiently establishes the existence of a "standard operating procedure" that dictated that the vehicle in question would have been searched and its contents inventoried. *See Smith*, 510 F.3d at 652 ("'Whether a police department maintains a written [inventory] policy is not determinative, where testimony establishes the existence and contours of the policy.'") (quoting *United States v. Tackett*, 486 F.3d

230, 233 (6th Cir. 2007)); *see, e.g., United States v. Kimes*, 246 F.3d 800, 804 (6th Cir. 2001) (policy of removing and impounding unattended vehicles sufficient to establish that evidence would have been inevitably discovered through inventory search of vehicle).

Officer Wells testified that, while defendant was stopped at the intersection because of the tracking warrant, defendant was not arrested until after the search of his residences yielded drugs and weapons. If it had not already been searched, the police's tow policy would have prompted an inventory search of the vehicle prior to impounding, at which time officers would have discovered the cell phone and currency. The Court finds, therefore, that the evidence from the search of the vehicle should not be suppressed for the additional reason that it would have been inevitably discovered through other independent, lawful means.

E. **Fruits of the Poisonous Tree**

Because the Court finds that the vehicle was properly searched, and the evidence from the vehicle is not subject to suppression, it need not reach defendant's subsequent argument that all of the evidence in this case must be suppressed as fruits of a poisonous tree. If it were to reach the issue, however, it would find that the evidence derived from the subsequent search of defendant's residences is sufficiently attenuated from the initial stop of the vehicle such that it would be admissible in any event.

The exclusionary rule is "supplemented by the 'fruit of the poisonous tree' doctrine, which bars the admissibility of evidence which police derivatively obtain from an unconditional search or seizure." *United States v. Williams*, 615 F.3d 657, 668 (6th Cir. 2010) (citation omitted); *see United States v. Pearce*, 531 F.3d 374, 381 (6th Cr.

2008). To invoke this doctrine, it is not enough to show a but-for relationship between the discovery and the illegal police action. *Wong Sun v. United States*, 371 U.S. 471, 487-88, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963). The proper test for exclusion is "whether, granting the establishment of the primary illegality, the evidence . . . has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Id*. at 487-88 (citation and quotation marks omitted).

The record is clear that officers were prepared to execute the search warrants for the Youngstown properties when defendant was stopped by Officer Mosca. The searches would have gone forward even if defendant had not attempted to drive by the premises immediately prior to the searches. The discovery of the drugs, weapons, and ammunition did not come about by the exploitation of any illegality at the intersection where defendant's vehicle was stopped. While the Court finds that the stop of defendant's vehicle was permissible, it would also have found that the evidence discovered during the search of defendant's properties was not the fruit of a poisonous tree.

### III. CONCLUSION

For all of the foregoing reasons, defendant's motion to suppress is DENIED.

**IT IS SO ORDERED**.

Dated: August 19, 2014

                                                **HONORABLE SARA LIOI**
                                                **UNITED STATES DISTRICT JUDGE**